David Yeremian (Cal. Bar No. 226337)
david@yeremianlaw.com
DAVID YEREMIAN & ASSOCIATES, INC.
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone:  (818) 230-8380
Facsimile: (818) 230-0308

Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Charles R. Ash IV (*pro hac vice* forthcoming)
crash@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiffs and Proposed Class
and Collective Members*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| **JUAN LOPEZ and NICHOLAS DIXON,** individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **STAMPS.COM, INC.,** <br><br> Defendant. | Case No.: <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiffs, Juan Lopez and Nicholas Dixon ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, Stamps.com, Inc., (hereinafter referred to as "Defendant" or "Stamps"), and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*); California Labor Code §§ 201, 202, 203, 221, 223, 226, 226.7, 510, 512, 1194, 1197, 1197.1, 1198; California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200 *et seq.*; and California Labor Code § 2698 *et seq.*

2.      Defendant provides call center services to their customers primarily from a "brick-and-mortar" call center facility in El Segundo, California.

3.      Defendant employed Plaintiffs as non-exempt hourly call center employees (hereinafter referred to as "customer service representatives" or "CSRs") in the El Segundo, California call center. Some CSRs were permitted to occasionally work from home via a remote virtual private network ("VPN").

4.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. ***Exhibit A***.

5.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

6.      More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

7.     Defendant requires their hourly CSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the CSRs for all work performed; instead, Defendant only pays the CSRs *after* they have loaded several essential software programs on their computers and are available to accept calls. This policy results in CSRs not being paid for all time worked, including overtime.

8.     Defendant's CSRs use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the CSRs' work as they cannot perform their jobs effectively without them.

9.     Defendant's CSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

10.     Defendant also required or permitted CSRs to perform off-the-clock work at the end of their shifts when they were required to shut-down and log-out of the essential computer software used to perform their jobs.

11.     Additionally, Defendant maintained a common policy which required Plaintiffs to assist other CSRs at the beginning and end of their shifts while they were off-the-clock when there was a surplus of "calls in the que."

12.     Defendant's CSRs were also deprived of meal and rest breaks as required by California labor laws due to Defendant's common unlawful policies and practices.

13.     The individuals Plaintiffs seek to represent in this action are current and former CSRs that worked in Defendant's brick-and-mortar call center (which includes, but is not limited to, those that occasionally worked from home) and are similarly situated to each other in terms of their common experience of Defendant's violations of federal and state law.

14.     Defendant knew or could have easily determined how long it takes for the CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

15.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and

Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

16.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

17.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

18.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship from Defendant.

19.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees, including the Plaintiffs in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

20.     The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

21.     The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

22.     The court has personal jurisdiction over Defendant because Defendant conducts business within the state of California, employs individuals within the state of California, and is registered with the California Department of the Secretary of State.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

23.     Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privileges of conducting activities in the state of California and established minimum contacts sufficient to confer jurisdiction over Defendant, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

24.     Venue is proper in the Central District of California because Defendant employs CSRs in this district, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Central District of California.

## INTRADISTRICT ASSIGNMENT

25.     A substantial part of the events or omissions which give rise to the claims occurred in Los Angeles County, and therefore this action is properly assigned to the Western Division.

## PAGA NOTICE AND CLAIM

26.     On February 5, 2018 pursuant to California Labor Code § 2699.3, Plaintiffs issued notice to the California Labor and Workforce Development Agency of their  intention to file a representative action against Defendant under the California Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq*.

## PARTIES

27.     Plaintiff, Juan Lopez, is a resident of Long Beach, California. He was employed by Stamps as a CSR in El Segundo, California from September 22, 2014 through September 2016, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit B***. While, employed by Defendant, Plaintiff Juan Lopez was paid at a rate of $15.00 to $16.48 per hour.

28.     Plaintiff, Nicholas Dixon, is a resident of Florida. He was employed by Stamps as a CSR in El Segundo, California from October 5, 2015 through November 2016 and signed a consent form to

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

join this collective action lawsuit, which is attached hereto as ***Exhibit C***. While, employed by Defendant, Plaintiff Nicholas Dixon was paid at a rate of $17.00 per hour.

29.    Defendant, Stamps.com, Inc., is a Delaware corporation with its headquarters in El Segundo, California. Defendant, Stamps.com, Inc., is licensed to do business in the State of California (Corporate ID# C2068385) and its registered agent for service of process in California is Seth Weisberg, 1990 E. Grand, Ave., El Segundo, California 90245.

30.    According to Defendant's website, it is "a leading provider of internet-based postage services." "The Company targets its services to small businesses and home offices, and currently has PC Postage partnerships with Avery, Microsoft, HP, the U.S. Postal Service and others." *See* https://www.stamps.com/company-info/ (last visited on 1/16/18).

31.    Defendant has nearly 650,000 monthly subscribers and was "the first company to be approved by the U.S. Postal Service to offer a software-only postage service that lets customers buy and print postage online." *See* https://www.stamps.com/company-info/overview/ (last visited on 1/16/18).

32.    "Stamps.com offers customers a secure internet mailing solution to print postage using their existing computer, printer and internet connection without having to go to the Post Office." *See* https://www.stamps.com/company-info/overview/ (last visited on 1/16/18).

33.    Upon information and belief, Defendant has employed over one thousand (1,000) CSRs in its brick-and-mortar call center locations in the last three years.

## **GENERAL ALLEGATIONS**

34.    As CSRs for Defendant, Plaintiffs were responsible for, among other things, responding to inbound telephone calls from customers of Defendant and assisting those customers with troubleshooting technical issues and answering questions.

35.    Defendant used a number of titles to refer to CSRs, including, but not limited to: Technical Support Representative, Customer Support Representative, Fraud Analyst, Tier 2 Support, and HVST.  Plaintiff Juan Lopez was employed with the specific title Technical Support Representative,

but also performed the job duties of other types of CSRs. Plaintiffs Juan Lopez and Nicholas Dixon were employed with the specific job title: Technical Support Representative.

36.     Upon information and belief, all CSRs were hourly, non-exempt employees.

37.     All of Defendant's CSRs use similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are integral and an important part of the CSRs' work and they cannot perform their jobs without them.

38.     All Defendant's CSRs received substantially the same training, were subject to the same disciplinary policies, and were subject to quality assurance reviews based on the same or similar criteria.

39.     Defendant expressly instructed and trained CSRs to have all their computer networks, software programs, and applications opened and ready before they changed their status to "Available" to receive incoming calls.  Defendant enforced this policy through their quality assurance grading system.

40.     Defendant's Quality Assurance Team ("QAT") monitored CSRs calls.  QAT used a point system to grade CSRs' calls.

41.     For example, points were deducted from the CSRs' scores if there was a 10 second pause of silence in responding to a customer question.  As a result, CSRs needed to have all of their work applications up and running to avoid a mark down.  This was referred to by Defendant as the "10 Second Rule."

42.     Similarly, the maximum hold time permitted by Defendant was three (3) minutes per hold. If the CSR placed a customer on hold for longer than three minutes they were marked down by the QAT.  This policy reinforced that CSRs were required to have all computer networks, software programs, and applications opened and ready at the time they changed their status to "Available."

43.     Defendant used the computer program "Interaction Client" to track CSRs' hours worked for purposes of compensation.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

44.     Upon information and belief, Interaction Client had several paid and unpaid statuses.

45.     Defendant expressly instructed Plaintiffs and all other CSRs that they should not be in a paid state within the program Interaction Client, unless they were prepared to field phone calls.

**A.     <u>Pre-Shift Off-the-Clock Work</u>**

46.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time ranging from five (5) to ten (10) minutes per day, or even longer when technical issues arise.  Before clocking in, Plaintiffs and each CSR must undertake the following essential work tasks in chronological order:

- First, the CSRs must locate their workstation and turn-on/warm-up their computer;

- The CSRs must then log into Windows using a username and password;

- The CSRs are then required to start-up and log-in to the following programs/applications that are utilized during their shifts including (but not limited to): RNT (by Oracle), Internet Explorer, InfoSys and CRT, Yammer, and Interaction Client;

- The CSRs are then required to open and access Defendant's e-mail system and check their e-mail for important notices.

- Finally, the CSRs change their status from "idle" to "available" in Interaction Client to log in and begin receiving calls.

47.     Defendant's CSRs complete this process before being clocked-in and paid each shift; meaning that they are performing off-the-clock work in the range of five (5) to ten (10) minutes per shift without compensation.

48.     On days that Plaintiffs and other CSRs worked from home, they were required to undertake the additional time-consuming step of connecting to Defendant's virtual private network

(VPN) from a remote location.  Aside from connecting remotely to the VPN, the boot-up process is otherwise the same as if they were booting-up in the call center.

49.     In addition to the time spent booting up computers, Defendant had a regular policy and practice wherein Plaintiffs and the CSRs who arrived early for their shifts were asked to assist other CSRs in fielding phone calls that were backed up "in the que" before the start of their scheduled shifts and before they got clocked in.

50.     The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### B.    Meal-Period Off-the-Clock Work

51.     Defendant provides Plaintiffs and the CSRs with one unpaid meal break per shift.

52.     In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

53.     However, Defendant does not provide Plaintiffs and the CSRs with a legitimate bona fide meal period.

54.     Defendant failed to provide a bona fide unpaid meal period because it requires Plaintiffs and the CSRs to return to their computer stations prior to the end of their meal periods and then to spend

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking customer calls promptly at the end of their scheduled meal periods.

55.     The work performed by Plaintiffs and Defendant's CSRs during their unpaid meal periods takes substantial time on a daily basis with said time ranging from one (1) to ten (10) minutes per day, or more, depending on whether they were kicked out of their computer programs while on lunch.

56.     Additionally, Defendant often encourages and permits CSRs to take their unpaid meal period at their workstation in order to answer questions from other CSRs or Team Leaders.

## C.     Rest-Break Violations

57.     CSRs, such as Plaintiffs, are full-time employees and regularly work shifts of at least eight (8) hours per day.

58.     Plaintiffs were often required to work through breaks when the call center experienced high call volume.  Defendant failed to provide Plaintiffs and the CSRs with rest breaks, as required by Cal. Labor Code 226.7, 512, and California Wage Order No. 4-2001.  Cal. Labor Code 226.7 provides:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, *the employer shall pay the employee one additional hour of pay at the employee's regular rate* of compensation for each workday that the meal or rest or recovery period is not provided.

59.     Defendant failed to pay Plaintiffs and other CSRs an additional hour of pay at the regular rate of pay when a rest break was missed.

60.     Defendant maintained a common policy and practice of requiring CSRs to work through their rest periods when the call center had calls backed up in the call que.

//

### C.    Post-Shift Off-the-Clock Work

61.    Pursuant to Defendant's policies, training and direction, Plaintiffs and all other CSRs are required to shut down and logout of certain computer programs and applications they use during their shift *after* they log-out of Defendant's timekeeping system.  The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from two (2) to three (3) minutes per shift, but can take as long as ten (10) minutes if the CSR experiences technical problems with the computer/software/applications.

62.    Pursuant to Defendant's policies, training and direction, Plaintiffs and the CSRs are not allowed begin the shutdown and log-out process until after their shifts end and after they clock out of Defendant's timekeeping system. In this regard, Defendant requires Plaintiffs and the CSRs to clock out of the timekeeping system right at the end of their scheduled shifts, as opposed to when they complete performing all work activities and tasks.

63.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay CSRs for no less than 2 to 3 minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

64.    Similar to the start of shift activities, Plaintiffs and the CSRs were often required to field calls after the end of their scheduled shift and after they clocked out of the timekeeping system when calls were still in the call que. This resulted in additional off-the-clock work for which Plaintiffs and the CSRs were not compensated for at the end of their shifts.

65.    The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

//

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

### D.    Exemplary Pay-Period to Illustrate Pre- and Post-Shift Compensation Deficiencies

66.    An example of specific workweeks where Defendant failed to pay Plaintiff Lopez all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

#### Pay Period of 8/8/16 to 8/21/16

- Plaintiff Lopez was paid at a rate of $16.48 per hour for his 80.00 regular hours and $24.72 per hour for 6.75 overtime hours.

- With unpaid pre-shift, mid-shift and post-shift time, in a range of 8 to 23 minutes per shift, at five shifts per week, Plaintiff Lopez should have been paid an additional 40 to 115 minutes at his overtime rate of $24.72 during the pay period.

*Exhibit D*, Lopez Paystubs

#### Pay Period of 05/4/15 to 05/17/15

- Plaintiff Lopez was paid at a rate of $16.48 per hour for his 80.00 regular hours and $24.00 per hour for .67overtime hours.

- With unpaid pre-shift, mid-shift and post-shift time, in a range of 8 to 23 minutes per shift, Plaintiff Lopez should have been paid an additional 40 to 115 minutes at her overtime rate of $24.72 during the pay period.

*Id.*

67.    An example of specific workweeks where Defendant failed to pay Plaintiff Dixon all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

#### Pay Period of 1/25/2016 to 02/7/2016

- Plaintiff Dixon was paid at a rate of $17.00 per hour for his 80.00 regular hours and $25.50 per hour for 1.65 overtime hours.

- With unpaid pre-shift, mid-shift and post-shift time, in a range of 8 to 23 minutes per shift, Plaintiff Dixon should have been paid an additional 40 to 115 minutes at her overtime rate of $25.50 during the pay period.

*Exhibit E*, Dixon Paystubs.

#### Pay Period of 3/21/2016 to 04/3/2016

- Plaintiff Dixon was paid at a rate of $17.00 per hour for his 79.90 regular hours and $25.50

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

per hour for 1.17 overtime hours.

- With unpaid pre-shift, mid-shift and post-shift time, in a range of 8 to 23 minutes per shift, Plaintiff Dixon should have been paid an additional 40 to 115 minutes at her overtime rate of $25.50 during the pay period.

*Id.*

### E.   <u>Defendant Benefitted from the Uncompensated Off-the-Clock Work</u>

68.   At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above described pre-shift, meal-period, rest-break, and post-shift activities performed by Plaintiffs and other CSRs.

69.   At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and other CSRs.

70.   At all relevant times, Defendant was able to track the amount of time Plaintiffs and the other CSRs spent in connection with the pre-shift, meal-period, rest-break, and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiffs and other CSRs for the off-the-clock work they performed.

71.   At all relevant times, Plaintiffs and the CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

72.   At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the CSRs in order to pressure them into performing the pre-shift, meal-period, rest-break, and post-shift off-the-clock work.

73.   Defendant expressly trained and instructed Plaintiffs and their other CSRs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shifts began.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

74.     In other instances, when Plaintiffs arrived early for their scheduled shift and the call center was experiencing high call volume, Plaintiffs and CSRs were instructed to begin taking calls even before their scheduled shifts began and before they clocked into Defendant's timekeeping system.

75.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the CSRs of wages owed for the pre-shift, meal-period, rest-break, and post-shift activities they performed. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

76.     Defendant knew or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre-shift, meal-period, rest-break, and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

77.     Despite knowing Plaintiffs and other CSRs performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

78.     Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs and the CSRs at the FLSA mandated overtime premium of one and one-half the their regular hourly rate because Plaintiffs and the CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

79.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly brick-and-mortar and/or at-home Customer Service Representatives who work or have worked for Defendant at any time from February 8, 2015 through judgment.*

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

(hereinafter referred to as the "FLSA Collective").   Plaintiffs reserve the right to amend this definition if necessary.

80.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated CSRs.

81.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

82.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

83.    All of the work that Plaintiffs and the members of the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

84.    As part of their regular business practices, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

    b.  Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

85.    Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

86.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

87.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

88.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift log-out/shut-down time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

89.     There are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

90.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

91.     Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

92.     Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

//

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## RULE 23 CALIFORNIA CLASS ACTION ALLEGATIONS

93.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> ***All similarly situated current and former hourly brick-and-mortar and/or at-home Customer Service Representatives who work or have worked for Defendant in California at any time from February 8, 2014 through judgment.***

(hereinafter referred to as the "Rule 23 California Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

94.     Plaintiffs share the same interests as the putative Rule 23 California Class and will be entitled under the California Labor Code to unpaid overtime compensation, unpaid minimum wages, unpaid regular wages, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

95.     The putative Rule 23 California Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendant employed hundreds, if not thousands, of CSRs in California. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

96.     The putative Rule 23 California Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class.  Individual questions that Plaintiffs' claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

a. Whether Defendant engaged in a policy or practice of failing to pay each Class member regular wages or minimum wage for each non-overtime hour worked.

b. Whether Defendant engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

c. Whether Defendant failed to provide each Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Labor Code and regulations;

d. Whether Defendant failed to provide each Class member with rest periods as required by the California Labor Code and regulations;

e. Whether Defendant violated sections 201, 202, and 203 of the Labor Code by willfully failing to pay all wages and compensation due each Class member who quit or who was discharged;

f. Whether Defendant violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

g. Whether Defendant violated section 1174 of the Labor Code by failing to maintain accurate records of hours worked and wages paid to Class members;

h. Whether Defendant was unjustly enriched by the work and services performed by Class members without compensation;

i. Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200 *et seq.*; and

j. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

97. The putative Rule 23 California Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all employed by Defendant and performed their job duties without receiving wages, including overtime wages, owed for that work.

98. The putative Rule 23 California Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative Class members, and because Plaintiffs' attorneys have successfully prosecuted many complex class actions, including wage

and hour class and collective actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

99.     The putative Rule 23 California Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

100.     The putative Rule 23 California Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

101.     Given the material similarity of the putative Rule 23 California Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.***
**FAILURE TO PAY OVERTIME WAGES**

102.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

103.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

104.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees"

of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

105.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

106.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

107.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

108.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than eight (8) and as much as twenty three (23) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

109.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

110.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including the shift differential where applicable.  29 U.S.C. § 207.

111.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for their CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective

for these work activities, but did not.

112.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 510, 1194, 1197.1, 1198 AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME

113.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

114.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation.

115.    At all relevant times, Plaintiffs and the Rule 23 California Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

116.    California Labor Code §§ 223, 510, 1194, 1197.1 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K) provide that; (a) employees must be paid no less than the applicable minimum wage for all hours worked; (b) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (c) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

117.    At all relevant times, Plaintiffs and the Rule 23 California Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

118.    At all relevant times, Defendant failed and refused to pay Plaintiffs and the Rule 23 California Class members for all hours actually worked in excess of their scheduled shifts.

119.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiffs and other Rule 23 California Class members who worked overtime hours.

120.    Plaintiffs and the Rule 23 California Class were entitled to receive overtime compensation at their lawful regular rate of pay, including any shift differential where applicable. Defendant's failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 223, 510, 1194, 1197.1, 1198, and IWC Wage Order No. 4.

121.    Wherefore, Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's failure to pay for all time worked and such premium compensation, as required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY MINIMUM WAGE AND REGULAR**
**WAGES FOR ALL HOURS WORKED**

122.    Plaintiff re-allege and incorporate all previous paragraphs herein.

123.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, including minimum wage and regular wages for all hours worked.

124.    California Labor Code §§ 223, 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the

applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

125.    At all relevant times, Defendant failed and refused to pay Plaintiffs and the Rule 23 California Class members minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

126.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive Plaintiffs and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff and other Rule 23 California Class members minimum wage and regular wages for all hours worked.

127.    Plaintiffs and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendant's failure to pay such wages, as alleged above, was a willful violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B)

128.    Wherefore, Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked at their lawful regular rate of pay, including any shift differential where applicable, and including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2, as a result of Defendant's failure to pay for all time worked as is required under California law.

**COUNT IV**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223**
**UNLAWFUL DEDUCTIONS**

129.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

130.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation, minimum wage and regular wages for all hours worked.

131.    Defendant made deductions from Plaintiffs and the Rule 23 California Class members' paychecks in the amount of the overtime premiums, minimum wage and regular wages earned by the employees during the pay period so as to avoid paying overtime compensation, minimum wage and regular wages.

132.    California Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

133.    California Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code § 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

134.    As a result of the conduct alleged above, Defendant has unlawfully collected or received from Plaintiffs and the Rule 23 California Class part of the wages paid to their employees.

135.    Wherefore, Plaintiffs demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

## COUNT V
## VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND IWC WAGE ORDER 4 – FAILURE TO PROVIDE MEAL BREAKS

136.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

137.    California Labor Code §§ 226.7, 512, and Industrial Welfare Commission ("IWC") Wage Order No. 4 § 11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

138.     At all relevant times, Plaintiffs and the Rule 23 California Class consistently worked in excess of five (5) or ten (10) hours in a day.

139.     At all relevant times, Defendant regularly required employees to perform work during their first and/or second meal periods without proper compensation. Defendant's practice of requiring employees to perform work during their legally mandated meal periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 §§ 11(A) and (B).

140.     Defendant purposefully elected not to provide meal periods to Plaintiffs and the Rule 23 California Class members, and Defendant acted willfully, oppressively, and in conscious disregard of the rights of Plaintiffs and the Rule 23 California Class members in failing to do so.

141.     Plaintiffs are informed and believe Defendant did not properly maintain records pertaining to when Plaintiffs and the Rule 23 California Class members began and ended each meal period, in violation of Labor Code §1174 and IWC Wage Order No. 4 §§ 11(A) and (B).

142.     As a result of Defendant's knowing, willful, and intentional failure to provide meal breaks, Plaintiffs and the Rule 23 California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to California Labor Code § 226.7 and IWC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to California Labor Code §§ 218.5.

143.     Defendant's wrongful and illegal conduct in failing to provide Plaintiffs and the Rule 23 California Class members with meal breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiffs and the Rule 23 California Class members in that Defendant will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Rule 23 California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

144.     Wherefore, Plaintiffs demand, pursuant to Labor Code Section 226.7(b), that Defendant pays each Rule 23 California Class member one additional hour of pay at the Rule 23 California Class

member's regular rate of compensation for each work day that the meal period was not provided.

### COUNT VI
### VIOLATION OF CALIFORNIA LABOR CODE §§ 226.2, 226.7, 512 AND IWC WAGE ORDER 4 – FAILURE TO PROVIDE REST BREAKS

145.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

146.    California Labor Code §§ 226.7, 512, and IWC Wage Order No. 4 § §12(A) requires that "Employers shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."

147.    At all relevant times, Plaintiffs and the Rule 23 California Class consistently worked in excess of four (4) hours in a day.

148.    California Labor Code sections 226.2, 226.7 and 512 and IWC Wage Order No. 4 § §12(B) require employers to pay an employee one additional hour of pay at the employee's regular rate for each work day that a rest period is not provided.

149.    Plaintiffs and other aggrieved employees were regularly not allowed to take proper rest periods and were not properly compensated for missed meal and rest periods.

150.    As a result of Defendant's knowing, willful, and intentional failure to provide rest breaks, Plaintiffs and the Rule 23 California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to California Labor Code § 226.7 and IWC Wage Order No. 4 § 12(B), and penalties, reasonable attorneys' fees, and costs pursuant to California Labor Code §§ 218.5.

151.    Defendant's wrongful and illegal conduct in failing to provide Plaintiffs and the Rule 23 California Class members with rest breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiffs and the Rule 23 California Class members in that Defendant will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current

and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Rule 23 California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

152.    Wherefore, Plaintiffs demand, pursuant to Labor Code Section 226.7(b), that Defendant pays each Rule 23 California Class member one additional hour of pay at the Rule 23 California Class member's regular rate of compensation for each work day that a rest period was not provided as required.

### COUNT VII
### VIOLATION OF CALIFORNIA LABOR CODE § 226
### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

153.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

154.    California Labor Code § 226 provides that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing gross wages earned, total hours worked, and the applicable hourly rates and corresponding number of hours worked. California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A) likewise require employers to maintain records of hours worked daily and wages paid to employees.

155.    At all relevant times, Defendant failed to furnish Plaintiffs and the Rule 23 California Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of California Labor Code § 226.

156.    Plaintiffs are informed and believes that Defendant knew or should have known that Plaintiffs and the Rule 23 California Class members were entitled to receive wage statements compliant with California Labor Code § 226, and that Defendant willfully and intentionally failed to provide Plaintiffs and the Rule 23 California Class members with such accurate, itemized statements.

157.    Wherefore Plaintiffs demands that Defendant pay each and every Rule 23 California Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to California Labor Code § 226, as well as reasonable attorneys' fees and costs.

**COUNT VIII**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 202, AND 203**
**FAILURE TO TIMELY PAY WAGES UPON DISCHARGE**

158.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

159.   California Labor Code §§ 201 and 202 requires employers to pay their employees all wages due within the time specified by law.  California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employee must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

160.   Plaintiffs and the Rule 23 California Class members who ceased employment with Defendant are entitled to unpaid compensation, but to date have not received such compensation.

161.   More than thirty days have passed since Plaintiffs and certain Rule 23 California Class members left Defendant's employ.

162.   As a consequence of Defendant's willful conduct in not paying compensation for all hours worked, Plaintiffs and the Rule 23 California Class members whose employment ended during the class period are entitled to thirty days' wages under California Labor Code § 203, together with interest thereon and attorneys' fees and costs.

**COUNT IX**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq*.**

163.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

164.   Defendant engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above, including (a) training and directing Plaintiffs and the Rule 23 California Class to work off-the-clock without minimum wage, regular wage, or overtime compensation; (b) making deductions to Plaintiff's and the Rule 23 California Class members' paychecks to recover overtime premiums, minimum wage and regular wages earned by the employee; (c) requiring Plaintiff's and the Rule 23 California Class to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks, rest breaks or premium compensation in lieu thereof;(e) failing to provide accurate, itemized wage statements and failing to

maintain accurate payroll records; and (f) failing to timely pay all wages due upon discharge.

165.  In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and unfair business practice within the meaning of Business & Professions Code § 17200, *et seq.*

166.  As a result of Defendant's conduct, Plaintiffs and the Rule 23 California Class have been harmed as described in the allegations set forth above.

167.  The actions described above, constitute false, unfair, fraudulent and deceptive business practices within the meaning of California Business & Professions Code § 17200, *et seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendant has obtained valuable property, money and services from Plaintiffs and the Rule 23 California Class, and have deprived Plaintiffs and the Rule 23 California Class fundamental rights and privileges guaranteed to all employees under California law.

168.  Defendant was unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendant over other businesses providing similar services which routinely comply with the requirements of California law.

169.  Plaintiffs seek, on his own behalf, and on behalf of the putative Rule 23 California Class members, full restitution of all monies withheld, acquired and/or converted by Defendant by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendant by means of the acts and practices described herein.

170.  Plaintiffs seek, on their own behalf, and on behalf of other Rule 23 California Class members similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of herein. Defendant's unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs and all Rule 23 California Class members in that the Defendant will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiffs and the Rule 23 California Class have no other adequate

remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

### COUNT X
### PRIVATE ATTORNEYS GENERAL ACT ("PAGA")
### VIOLATION OF CALIFORNIA LABOR CODE § 2698, *et seq*.

171.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

172.   Plaintiffs are "aggrieved employees" under PAGA, and have been employed by Defendant during the applicable statutory period and suffered one or more of the Labor Code violations herein.  As such, they seek to recover, on behalf of themselves and all other current and former aggrieved employees of Defendant ("PAGA Group"), the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

173.   Plaintiffs seek to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Therefore, class certification of the PAGA claims is not required, but Plaintiff may choose to seek certification of the PAGA claims.

174.   Plaintiffs seek to pursue remedies pursuant to PAGA for the following violations.

a.   Failure to Pay Overtime: Defendant unlawfully failed to pay Plaintiffs and the PAGA Group overtime compensation in violation of Cal. Labor Code §§ 223, 510, 1194, 1197.1, 1198 and California Wage Order No. 4-2001.

b.   Failure to Pay Minimum Wages and Regular Wages: Defendant unlawfully failed to pay Plaintiffs and the PAGA Group minimum wage and regular wage compensation in violation of Cal. Labor Code §§ 223, 1194, 1197, 1197.1 and California Wage Order No. 4-2001.

c.   Payment of Wages Below Designated Rate and Taking of Unlawful Deductions: Defendant unlawfully paid Plaintiffs and the PAGA Group at below the designated rate in violation of California Wage Order No. 4-2001 and Cal. Labor Code §§ 221 and 223, as detailed herein.

d.   Failure to Provide Meal and Rest Breaks: Defendant unlawfully failed to provide Plaintiffs

and the PAGA Group meal and rest breaks as required by Cal. Labor Code 226.7, 512, and California Wage Order No. 4-2001.

e.     Failure to Provide Complete and Accurate Wage Statements:   Defendant failed to provide complete and accurate wage statements containing all wages due to Plaintiffs and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 226(a), as detailed herein.

f.     Failure to Keep Accurate Payroll Records:   Defendant failed to provide complete and accurate wage statements regarding all wages due to Plaintiffs and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 1174 *et seq.*, as detailed herein.

g.     Failure to Timely Pay Wages Due Upon Discharge:   Defendant failed to timely pay all wages due to Plaintiffs and certain members of the PAGA Group in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 201-203, as detailed herein.

175.    California Labor Code § 2698, *et seq*. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of Labor Code §§ 201, 202, 203, 221, 223, 226, 226.7, 510, 512, 1194, 1197, 1197.1, 1198, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

176.    Plaintiffs have taken steps to ensure full compliance with the procedural requirements specified in California Labor Code 2699.3 as to each of the alleged violations.  On February 5, 2018 Plaintiffs provided notice to the LWDA of Plaintiff's claims based on the alleged Labor Code violations, including the facts and theories supporting these claims.

177.  Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest.  Plaintiffs' successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public. Private enforcement of these rights is necessary, as no public agency has pursued enforcement.  Plaintiffs are incurring a financial burden in pursuing this action, and it would be against the interest of justice to require the payment of attorneys' fees and costs from any recovery obtained, pursuant to, *inter alia*, California Labor Code § 2699.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on their own behalf and on the behalf of the putative Collective and Rule 23 California Class, request judgment as follows:

a.  Certifying this case as a Collective in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.  Designating Plaintiffs as Class Representatives of the proposed FLSA Collective;

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all similarly situated Collective members, and permitting Plaintiffs to send notice of this action to all those Collective members, including the publishing of notice in a manner that is reasonably calculated to apprise the potential Collective members of their rights under the FLSA;

d.  Certifying the proposed Rule 23 California Class;

e.  Designating Plaintiffs as Class Representative of the proposed Rule 23 California Class;

f.  Ordering service awards for the Class Representatives in recognition of the time, effort, and risk they incurred in bringing this action and as compensation for the value they have provided to the Class members;

g.  Appointing Sommers Schwartz, P.C. and Finkelstein and Krinsk, LLP, as Class Counsel;

h.  Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, California Labor Code, and UCL;

i.  Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

j.  Granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiffs worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

k.  Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

l.  Granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid minimum wages and regular wages calculated at Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours

that Plaintiffs worked for the past four years;

m.   Awarding liquidated damages in an amount equal to the amount of unpaid minimum wages and regular wages found due and owing;

n.   For statutory and civil penalties pursuant to Labor Code §§ 201, 202, 203, 221, 223, 226, 226.7, 510, 512, 1194, 1197, 1197.1, 1198 and 2698 *et. seq.*;

o.   For disgorgement and restitution to Plaintiffs and other similarly affected Class members of all funds unlawfully acquired by Defendant by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200 *et seq.*;

p.   For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendant and determined to have been wrongfully acquired by Defendant as a result of violations of California Business and Professions Code § 17200, *et seq.*;

q.   For an injunction prohibiting Defendant from engaging in the unfair business practices complained of herein;

r.   For an injunction requiring Defendant to give notice to persons to whom restitution is owing of the means by which to file for restitution;

s.   For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 4 § 7(A) related to wage statements and record keeping;

t.   For an order requiring Defendant to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record-keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendant and their agents, servants and employees related thereto;

u.   For pre-judgment interest as allowed by California Labor Code §§ 218.6 and 1194, and California Civil Code § 3287 and other statutes;

v.   For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, 29 U.S.C. 216(b); California Labor Code §§ 218.5, 226(e) and (h), 1194, and 2699; and California Code of Civil Procedure § 1021.5; and

w.   For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, Juan Lopez and Nicolas Dixon, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal

Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: February 7, 2018

By:_____
    David Yeremian (Cal. Bar No. 226337)
    david@yeremianlaw.com
    DAVID YEREMIAN & ASSOCIATES, INC.
    535 N. Brand Blvd., Suite 705
    Glendale, California 91203
    Telephone:  (818) 230-8380
    Facsimile: (818) 230-0308

    Kevin J. Stoops (*pro hac vice* forthcoming)
    kstoops@sommerspc.com
    Charles R. Ash, IV (*pro hac vice* forthcoming)
    crash@sommerspc.com
    SOMMERS SCHWARTZ, P.C.
    One Towne Square, Suite 1700
    Southfield, Michigan 48076
    Telephone: (248) 355-0300
    Facsimile: (248) 436-8453

    *Trial Counsel for Plaintiffs and Proposed Class and Collective Members*

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND