DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
david@yeremianlaw.com
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone: (818) 230-8380
Facsimile: (818) 230-0308

SOMMERS SCHWARTZ, P.C.
Kevin J. Stoops (*pro hac vice*)
kstoops@sommerspc.com
Charles R. Ash IV (*pro hac vice*)
crash@sommerspc.com
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiffs and Proposed Class
and Collective Members*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| **JUAN LOPEZ and NICHOLAS DIXON,** individually and on behalf of all other similarly situated individuals,<br><br>               Plaintiffs,<br><br>    vs.<br><br>**STAMPS.COM, INC.,**<br><br>          Defendant. | Case No.: 2:18-cv-01101-DSF-KS<br><br><u>Class and Collective Action</u><br><br><u>Assigned for All Purposes to</u>:<br>Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE, AND SETTING FINAL APPROVAL HEARING**<br><br>[*Filed concurrently with Notice of Motion and Motion; Declaration of Kevin Stoops; [Proposed] Order*]<br><br>Hearing:  October 22, 2018<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 7D, 1st Street<br>               Courthouse, Los Angeles, CA<br><br>Original Complaint: February 8, 2018 |

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ..................................................................................iv

I.      INTRODUCTION ..................................................................................1

II.     PROCEDURAL  HISTORY OF THE CASE.........................................2

        A.      The Proceedings, Pleadings, and Parties..................................2

        B.      Summary of Discovery Conducted Prior to Mediation ........3

        C.      Mediation and Defendant's Estimated Liability Exposure..................4

                1.      Off-the-Clock Wage Claims ........................................5

                2.      California Labor Code Claims......................................6

                3.      PAGA Claim..................................................................7

                4.      Total Potential Liability and Percentage of Recovery................7

III.    SETTLEMENT TERMS ........................................................................8

        A.      Value of the Settlement to the Class ......................................8

        B.      Size of the Classes and the Class Definitions ......................8

        C.      Nature of the Payments and Notice, Exclusion, Objection Periods........................................8

        D.      The Released Claims and Released Parties .........................9

        E.      Attorney's Fees, Costs, Enhancement, Administration, PAGA ....................................10

        F.      The Net Distribution Funds; Calculations and Payments to Classes................................10

        G.      Notice Procedures ...................................................................11

        H.      Tax Consequences and Allocations and Uncashed Checks, Cy Pres .....................................11

IV.     ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL.................11

        A.      Standard of Review for Class Action Settlements.............................11

                1.      Strength  of  Plaintiffs'  Case,  Mediation  Supports Approval ..................................12

i

2.  The Risk, Expense, Complexity, Likely Duration of Litigation ......................................................................... 13

3.  The Risk of Maintaining Class Action Status Through Trial ................................................................................... 15

4.  The Amount Offered In Settlement Is Fair and Reasonable ................................................................... 15

5.  The Extent of the Discovery Completed, State of Proceedings .......................................................................... 17

6.  The Experience and Views of Counsel ..................................... 18

7.  The Presence of a Governmental Participant .......................... 18

V.  THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED ................................................................................. 18

A.  The Settlement Classes Satisfy the Requirements of Rule 23 ............ 18

1.  The Numerosity Requirement is Satisfied ............................... 19

2.  Common Questions of Law and Fact Exist ............................. 19

3.  Claims of the Plaintiffs are Typical ........................................ 19

4.  Plaintiffs are Adequate ............................................................ 20

B.  The Prerequisites of Rule 23(b) Are Also Satisfied ......................... 20

1.  The Predominance Requirement ............................................. 20

2.  The Superiority Requirement .................................................. 21

C.  The Standard for Section 216(b) FLSA Settlement Approval is Met ........... 21

VI.  REQUESTED   APPROVAL   AND   FEES,   COSTS, ENHANCEMENT .............................................................................. 21

A.  The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval ..................................................................... 22

B.  The Class Representative Enhancement Is Reasonable ..................... 23

ii

C.      The Administrator and Administration Costs Should be
        Approved ............................................................................23

VII.    THE PROPOSED METHOD OF NOTICE IS APPROPRIATE .................24

VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED..............25

IX.     CONCLUSION ..........................................................................25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF AUTHORITIES**

## Cases

*Adams v. Inter-Con Security Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .......................................................................................................... 26

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ............................................ 18

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ............. 25

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................ 16

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ............................................................. 24

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ....................................... 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................... 25

*General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ......................................... 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) ............................................. 13

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ..................................................... 11

*In re American Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) .............................................. 21

*In re High–Tech Emp. Antitrust Litig.*, No. 1–CV–02509–LHK, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) .......................................................................................................... 14

*In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515 (N.D. Cal. Dec. 19, 2016)............................................................................................................. 24

*Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014) ............................... 15

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ............................................. 19

*Kritzer v. Safelite Sols., LLC*, No. 10 Civ. 0729, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012).......................................................................................................... 21

*Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*, 1989 WL 73211 (C.D. Cal. March 9, 1989) ............................................................................................................... 24

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................... 18

*Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004). 18

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).................................. 22

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976).................................. 18

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016)................... 22

*Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009) ............................... 26

## **Statutes**

29 U.S.C. § 216(b) ............................................................................................................ 2

29 U.S.C. § 254(a)(2) ...................................................................................................... 15

29 U.S.C. §201 ................................................................................................................... 2

29 U.S.C. 206 ................................................................................................................... 23

29 U.S.C. 207 ................................................................................................................... 23

Business and Professions Code, § 17200 ........................................................................ 3

California Civil Code § 1542 .......................................................................................... 11

California Labor Code § 201 ............................................................................................. 2

California Labor Code § 221 ............................................................................................. 2

California Labor Code § 223 ............................................................................................. 2

California Labor Code § 226 ............................................................................................. 2

California Labor Code § 226(a) ........................................................................................ 6

California Labor Code § 226(e) ........................................................................................ 6

California Labor Code § 226.7 .......................................................................................... 2

California Labor Code § 2698 ........................................................................................... 3

California Labor Code § 2699(a) ...................................................................................... 7

California Labor Code § 2699(e)(2) ............................................................................... 17

California Labor Code § 2699(f)(2) .................................................................................. 7

California Labor Code 1194 .............................................................................................. 2

California Labor Code 1197 .............................................................................................. 2

California Labor Code 1197.1 ........................................................................................... 2

California Labor Code 202 ................................................................................................ 3

California Labor Code 203 ................................................................................................ 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

California Labor Code 512 .................................................................................. 2
*Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin.,*
*Wage and Hour Div.*, 679 F.2d 1350 (11th Cir. 1982) ...................................... 23

Other Authorities
California's Private Attorney General Act ("PAGA") ........................................... 1
*Newberg on Class Action*, 3d Ed. § 11.51.......................................................... 19
Newberg, Attorney Fee Awards § 2.19 (1987) .................................................... 24

**Rules**
Fed. R. Civ. P. 23(a) ........................................................................................... 20
Fed. R. Civ. P. 23(a)(1) ...................................................................................... 20
Fed. R. Civ. P. 23(a)(2) ...................................................................................... 20
Fed. R. Civ. P. 23(b)(3) ...................................................................................... 21
Fed. R. Civ. P. 23(c) ........................................................................................... 25
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 25
Fed. R. Civ. Proc. 23(e) ..................................................................................... 13
Federal Rules of Civil Procedure 23 .................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    <u>INTRODUCTION</u>

3

This is an FLSA/California wage-and-hour hybrid collective/class action.

4 Plaintiffs Juan Lopez and Nicholas Dixon (hereinafter "Plaintiffs") and the putative

5 class members are approximately 248 hourly "customer service representatives"

6 ("CSRs") employed by defendant Stamps.com, Inc. ("Defendant"), located in El

7 Segundo, California.

8

The parties hereby request preliminary approval of a $647,500 collective/class

9 action settlement.   Filed in support of this Motion is the Settlement Agreement

10 (provided at **Exhibit A** to this Memorandum) and the declaration of Plaintiffs' Counsel,

11 Kevin Stoops (provided at **Exhibit B** to this Memorandum).  This is a common fund

12 settlement, with no claims process and no reversion. There will be no claim forms, and

13 those class/collective members who do not request exclusion from the Settlement will

14 automatically receive settlement checks. The state-law class and FLSA collective

15 members are defined as, with the exception of Paris Providence, a former customer

16 service representative who is separately pursuing wage and hour and other claims

17 against Stamps and thus is specifically excluded from the Settlement Class

18 definition,[1] "all current and former customer service representatives, including,

19 but not limited to, Technical Support Representatives, Customer Support

20 Representatives, Email Support Representatives, Quality Assurance Representatives,

21 Commerce Support Representatives, Fraud Analysts, Tier 2 Support Representatives,

22 and HVST Representatives, who worked for" Defendant, including any such

23 employee who regularly worked at Defendant's call center in El Segundo,

24 California in the above capacity but occasionally worked from home, at any time

25 from February 8, 2014  through the Preliminary Approval Date or October 22,

26 2018, whichever date occurs earlier. (Exh. A, Settlement, ¶¶ 1(a), 4).

27

28

---

[1] Ms. Providence issued a demand letter and announced her intention to file a lawsuit **after** the parties in this action had reached an agreement in principle at the July 24, 2018 mediation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

For settlement purposes only, Plaintiffs request entry of an order (1) preliminarily certifying the proposed Settlement Class and FLSA Collective under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. §201 *et seq*.; (2) preliminarily approving the parties' Settlement; (3) preliminarily appointing Plaintiffs Lopez and Dixon as the representatives for the Settlement Class Members and for the FLSA Collective Members, and Class Counsel as counsel for the Class Members and the FLSA Collective Members; (4) approving the parties' proposed Notice; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, costs, and service awards.

## II. __PROCEDURAL HISTORY OF THE CASE__

### A. __The Proceedings, Pleadings, and Parties__

Plaintiffs filed this case on February 8, 2018 asserting the following claims:

Count I: Violation of FLSA, 29 U.S.C. §201, *et seq.* Failure to Pay Overtime Wages (Collective Action under the Fair Labor Standards Act)

Count II: Violation of California Labor Code §§ 223, 510, 1194, 1197.1, 1198 and IWC Wage Order 4 – Failure to Pay Overtime (Rule 23 Class Action under California State Law)

Count III: Violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order 4 – Failure to Pay Minimum Wages and Regular Wages for All Hours Worked (Rule 23 Class Action under California State Law)

Count IV: Violation of California Labor Code §§ 221 and 223 – Unlawful Deductions (Rule 23 Class Action under California State Law)

Count V: Violation of California Labor Code § 226.7, 512 and IWC Wage Order 4 – Failure to Provide Meal Breaks (Rule 23 Class Action under California State Law)

Count VI: Violation of California Labor Code § 226.2, 226.7, 512 and IWC Wage Order 4 – Failure to Provide Rest Breaks (Rule 23 Class Action under California State Law)

Count VII: Violation of California Labor Code § 226 – Failure to Provide Accurate Wage Statements (Rule 23 Class Action under California State Law)

Count VIII: Violation of California Labor Code § 201, 202 and 203 4 – Failure to Provide Rest Breaks (Rule 23 Class Action under California State Law)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Count IX:   Violation of Business and Professions Code, § 17200, *et seq.* (Rule 23 Class Action under California State Law)

Count X:    Private Attorneys General Act ("PAGA"), Violation of California Labor Code § 2698, *et seq.*

Plaintiffs' Counsel also prepared a Pre-Discovery Motion for FLSA Conditional Certification with the intention to file it after the appearance of defense counsel and compliance with the local rules concerning meet and confer obligations.

Shortly after the appearance of defense counsel, the parties began discussing the possibility of an early mediation accompanied by a voluntary exchange of data and information. Part and parcel with those conversations, were discussions concerning delaying filing the Motion for Conditional Certification, tolling applicable statutes of limitations for the putative class, and filing an amended complaint.[2] Ultimately, the parties entered a comprehensive stipulation with the Court and the litigation was stayed until August 20, 2018.

The parties then scheduled and conducted a mediation with well-respected wage and hour class action mediator Gig Kyriacou on July 24, 2018. (Exh. B, Stoops Decl. ¶ 16). The parties were able to reach an agreement in principle and began working on the long form Stipulation of Settlement now before the Court. (*Id.*). Pursuant to the parties' stipulation and notice of settlement (ECF No. 29), the Court vacated all case management dates except filing of this preliminary approval motion. (ECF No. 30).

**B.   Summary of Discovery Conducted Prior to Mediation**

Plaintiffs' Complaint was based upon substantial pre-filing research, both factual and legal. Defendant has produced documents, ESI and class data responsive to Plaintiffs' informal discovery requests. The parties' counsel conducted numerous further conferences and exchanged correspondence on Plaintiffs' claims, Defendant's defenses, and the scope of discovery. (Exh. B, Stoops Decl., ¶ 18).

Through the efforts of counsel for both parties, substantial information was exchanged prior to mediation. This information included, among other things: a class list

---

[2] Plaintiffs' First Amended Complaint was filed on March 15, 2018.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

identifying dates of employment and rates of pay; compensation policies; training materials; employee handbooks; timekeeping records; badge swipe records; and Plaintiff personnel files. (*Id.* at 19). From this information, and with the assistance of their retained expert economist Desmond, Marcello & Amster, Plaintiffs' Counsel was able to ascertain the following information:

- 248 class members were employed during the class period.
- Average hourly wage rate:  $17.79 per hour.
- Total work shifts worked by class members during class period: 77,510.
- Total number of work weeks worked during class period: 15,499.
- Total work weeks with hours equal to or greater than 40 hours: 8,613 (equaling 55.56% of all work weeks).
- Number of employees who separated their employment during class period: 139.

(*Id.* at ¶ 20).

### C. Mediation and Estimated Exposure

Finding that their respective interests are best served by compromise, the parties agreed to mediate, after conducting the described discovery and investigation, on July 24, 2018 with well-respected wage and hour mediator, Gig Kyriacou. (Exh. B, Stoops Decl., ¶ 16). After a full day of substantial negotiations, the parties were able to reach a settlement in principle and entered into a tentative agreement, which formed the basis for the Settlement that followed and is now before the Court for approval. At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length (*Id.* at ¶ 16; Exh. A, Settlement, ¶ 30), while recognizing the uncertainty, risk, expense, and delay attendant to continuing the Action through trial and any appeals. (Exh. A, Settlement, p. 1).

The parties reached their Settlement only after evaluating Plaintiffs' theories of potential exposure for the underlying claims, and, with the assistance of the mediator, considering discounts to potential liability in light of Defendant's contentions and defenses. Class Counsel, with the assistance of Desmond, Marcello & Amster, developed

4

a damages model for the wage claims and California Labor Code penalties and calculated the maximum potential liability exposure that Plaintiffs contend Defendant faced on the claims as follows:[3] (*Id.* at ¶¶ 28-29).

### 1.    Off-the-Clock Wage Claims

Discovery established that the 248 class members were hourly, non-exempt employees, whom Plaintiffs contend were not paid for alleged off-the-clock pre-, mid- and post-shift time spent in connection with logging into and out of computer programs, servers and applications integral and necessary to perform their job duties.

Defendant refuted these allegations and presented evidence and arguments including: 1) the class members did not perform compensable off-the-clock work; 2) that any alleged off-the-clock work would be barred by the *de minimis* doctrine; and 3) as there is no written record of the alleged off-the-clock work, there is no way to determine how much time each class member worked off the clock and, thus, individualized issues predominated requiring individual inquiries that precluded Rule 23 certification and rendered any proposed class or collective trial unmanageable.

In light of the discovery exchanged (including timekeeping records, computer program launch records, and badge swipe data), Plaintiffs' Counsel determined that the best possible recovery for the pre-, mid- and post-shift log-in/log-out claims would equate to approximately 6 minutes per shift per class member. Assuming that each Class Member was paid the full measure of damages for each minute worked (full hourly rate, applicable overtime rate, and liquidated damages), and that the payment covered a class period extending back to February 2014 (four years prior to initiation of this litigation), Plaintiffs' expert calculated that the off-the-clock damages through September 2018 would equal: **$479,789**. (Defendant continues to dispute any

---

[3] In preparing for and taking part in the mediation, Plaintiffs' counsel ascertained that, due to Defendant's facially-compliant meal and rest period policies, as well as Defendant's practices on the ground, Plaintiffs would have difficulty certifying a class as to alleged meal and rest period violations and therefore recovering damages/penalties under California Labor Code §§ 226.2 and 226.7.

1   liability to the Settlement Class/Collective and did not review or validate Plaintiffs'
2   expert's calculations.)

3                **2.   California Labor Code Claims**

4        Under California Labor Code § 226(a) employees are entitled to receive, semi-
5   monthly or at the time of each payment of wages, an accurate itemized statement
6   showing gross wages earned, net wages earned, all applicable hourly rates in effect
7   during the pay period and the corresponding number of hours worked by the
8   employee at each hourly rate. Labor Code § 226(e) provides the following penalties
9   for an employer's failure to provide accurate wage statements: $50 for the initial pay
10  period in which a violation of § 226(a) occurred, and $100 for each violation of §
11  226(a) in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per
12  employee.

13       Applying a one-year statute of limitations, Plaintiffs' expert calculated that
14  Defendant's exposure for improper wage statement penalties (through June 26, 2018)
15  equals **$278,900**.   (Defendant continues to dispute any liability to the Settlement
16  Class/Collective and did not review or validate Plaintiffs' expert's calculations.)

17       Plaintiffs allege that Defendant "had a practice of not paying, upon termination
18  or resignation, the proper amount of unpaid overtime wages as a consequence of the
19  practice of Defendant's failure to properly calculate the amount of overtime
20  compensation due and owing."  *See* Cal. Lab. Code §§ 201 and 202. Plaintiffs seek
21  damages under California Labor Code § 203 which provides that upon termination or
22  resignation of the employee, "the wages of the employee shall continue as a penalty
23  from the due date thereof at the same rate until paid or until an action therefor is
24  commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code
25  § 203.

26       Applying a three-year statute of limitations, Plaintiffs' expert economist
27  determined that Defendant's exposure for waiting time penalties (through June 26,
28  2018) equals **$492,398**.   (Defendant continues to dispute any liability to the

Settlement Class/Collective and did not review or validate Plaintiffs' expert's calculations.)

### 3. PAGA Claim

Under California's Private Attorney General Act ("PAGA"), current or former aggrieved employees are deputized to bring a civil action against any "person" to recover civil penalties for Labor Code violations. Cal. Lab. Code § 2699(a). PAGA claims can be maintained for numerous Labor Code violations including, among others, an employer's failure to: 1) pay overtime; 2) provide meal periods; 3) provide rest periods; 4) pay minimum wages; 5) timely pay wages upon termination; 6) timely pay wages during employment; and 7) to provide complete and accurate wage statements. Pursuant to Labor Code § 2699(f)(2), PAGA penalties are calculated as follows:

> If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and ($200) for each aggrieved employee per pay period for each subsequent violation.

Applying a one-year statute of limitations, Plaintiffs' expert economist determined that Defendant's exposure for PAGA penalties equals **$557,800**. (Defendant continues to dispute any liability to the Settlement Class/Collective and did not review or validate Plaintiffs' expert's calculations.)

### 4. Total Potential Liability and Percentage of Recovery

Based on the damage analysis conducted by Plaintiffs' Counsel and their expert economist, and in light of the factual and legal defenses identified above and in the attached Declaration of Kevin Stoops (Exh. B), the $647,500 settlement equates to approximately 35.79% of Defendant's $1,808,887 potential total claim exposure. (Exh. B, Stoops Decl., ¶¶ 28-29). The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to 135% of the total actual wage damages suffered by

the Class when computing claims equal to 6 minutes of off-the-clock work per shift per class member (at their actual hourly rate of pay) *and* **adding liquidated damages**.

## III.   SETTLEMENT TERMS

The Stipulation of Settlement provides as follows:

### A.   Value of the Settlement to the Class

Defendant has agreed to pay a Gross Settlement Amount of $647,500 in connection with this non-reversionary Settlement. (Exhibit A, Settlement, ¶ 1(r)).

### B.   Size of the Classes and the Class Definitions

With the exception of Paris Providence, a former customer service representative who is separately pursuing wage and hour claims against Stamps and thus is specifically excluded from the Settlement Class definition, the Settlement Class consists of all current and former customer service representatives, including, but not limited to, Technical Support Representatives, Customer Support Representatives, Email Support Representatives, Quality Assurance Representatives, Commerce Support Representatives, Fraud Analysts, Tier 2 Support Representatives, and HVST Representatives, who worked for Defendant at any time during the Applicable Class Period, including any such employee who regularly worked at Stamps' call center in El Segundo, California in this capacity but occasionally worked from home.  (Exhibit A, Settlement, ¶ 4).

The applicable class period means February 8, 2014 through the Preliminary Approval date or October 22, 2018, whichever date occurs earlier. (*Id.* at ¶ 1(a)).

### C.   Nature of the Payments and Notice, Exclusion, Objection Periods

This is a common fund settlement with no reversion, and every participating class member will automatically receive a check for their Individual Settlement Payment. (Exhibit A, Settlement, ¶ 11(d)).

The FLSA Settlement Collective Members, by endorsing their checks and depositing them, will opt into the FLSA Settlement Collective and release the FLSA

Released Claims. (*Id.* at ¶ 14(b)).  Class  members who want to be excluded from the Settlement must mail a written Request for Exclusion to the Claims Administrator no later than 45 days after the original mailing of the Class Notice. (*Id.* at ¶ 12(h)).  Class and collective members will also have 45 days from the mailing of the Class Notice to object to the Settlement, and the Class Notice provides details on these objection procedures. (*Id.* at ¶ 12(g); *see also* Class Notice, at Exhibit A to Settlement).

### D.    The Released Claims and Released Parties

Under the Settlement, Class Members who do not request exclusion will release Defendant from the following claims:

> "**Non-FLSA Released Claims**" means (•) any and all claims, obligations, demands, actions, rights, causes of action and liabilities of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, (•) for any and all types of relief under all federal, state or local laws **(other than the FLSA)** governing wages, compensation, hours worked, the provision of meal and rest periods, and/or the maintenance of payroll records and the furnishing of accurate wage statements, including without limitation claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide timely or complete meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements, wage notices or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, (•) that were or which could have been asserted in the Litigation by any Class Member, and that arose or accrued at any time during the Applicable Class Period, arising from the Class Member's employment with Stamps. The definition of Non-FLSA Released Claims does not include any claims, obligations, demands, actions, rights, causes of action or liabilities that cannot be released as a matter of law.

In addition, Collective Members who do not request exclusion and cash their settlement check will release Defendant from the following claims:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

"**FLSA Released Claims**" means (•) any and all claims, obligations, demands, actions, rights, causes of action and liabilities of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, (•) for any and all types of relief under the FLSA, including without limitation claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, (•) that were or which could have been asserted in the Litigation by any Class Member, and that arose or accrued at any time during the Applicable Class Period, arising from the Class Member's employment with Stamps. The definition of FLSA Released Claims does not include any claims, obligations, demands, actions, rights, causes of action or liabilities that cannot be released as a matter of law.

(Exh. A, Settlement, ¶¶ 1(q), 1(v), and 14).

The Class Notice provides a detailed recitation of the releases under the Agreement, and makes clear the class and collective members are only releasing claims based on the factual predicate stated in the Complaint. *See, Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010).

Plaintiffs will also provide a general release, including a release of unknown claims under California Civil Code § 1542. (Exh. A, Settlement, ¶ 15).

### E. Attorney's Fees, Costs, Enhancement, Administration, PAGA

The Gross Settlement Amount of $647,500 will be used to pay the following:

- Class Counsel's Attorneys' Fees in an amount not to exceed $161,875 and Lawsuit Costs in an amount not to exceed $22,000 (any unapproved amounts will pour over to the class members). (Exh. A, Settlement, ¶ 7(a)).

- Service payments in the amount of $5,000 each to Class Representatives Juan Lopez and Nicholas Dixon. (*Id.* at ¶ 8(a)).

- Claims Administrator fees in an amount not to exceed $10,000. (*Id.* at ¶ 9(e)).

- PAGA LWDA Payment of $26,250.  (*Id.* at ¶ 1(t).

### F. The Net Distribution Funds; Calculations and Payments to Classes

10

The Gross Settlement Amount minus the above allocations as approved by the Court is the Net Settlement Amount, which is estimated to be **$463,625**, and this amount will increase with the addition of any un-awarded portions of the allocations. (Exh. A, Settlement, ¶ 2). The Net Settlement Amount will be paid in its entirety to the class and collective members who participate in the Settlement and will be utilized to pay Defendant's share of payroll taxes. (*Id.* at ¶ 1(u)).

With an estimated **248** class members (i.e., assuming no class members opt out of the Settlement), the average payment to them using a straight average is approximately **$1,869.45** per employee.

### G.    Notice Procedures

The Claims Administrator, Simpluris, Inc., will provide Notice of the Settlement to the class/collective members by U.S. mail and e-mail. (Exh. A, Settlement, ¶ 12(b)). The Claims Administrator will also maintain a website during the notice and payment period. (*Id.* at ¶ 12(c)). The Notice, at Exhibit A to the Settlement, has been drafted to efficiently yet comprehensively describe the terms of the Settlement. The Claims Administrator shall issue notice within 10 days of Defendant providing the class data to the Administrator (which must be provided within 10 days of preliminary approval). (Exh. A, Settlement, ¶¶ 11(b), 12(b)). Class/collective members will then have 45 days from the mailing of the Notice to opt out of or object to the Settlement. (*Id.* at ¶¶ 12(g), 12(h)). Plaintiffs submit the proposed Notice and notice procedures are the best practicable way to provide notice to the class/collective members.

### H.    Tax Consequences and Allocations and Uncashed Checks, Cy Pres

The Claims Administrator will calculate the Final Settlement Payments based on the class information provided by Defendant. (Exh. A, Settlement, ¶ 12(i)). The Claims Administrator shall allocate thirty-three percent (33%) of each Participating Class Member's Final Settlement Payment to "wages," thirty-four percent (34%) to "penalties" and thirty-three percent (33%) to "interest." (*Id.* at ¶ 5(d)). Any uncashed Settlement Checks or other residual funds will be donated to Bet Tzedek legal services.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  (*Id.* at ¶ 12(l)).

2  **IV.**   **ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL**

3      **A.**   **Standard of Review for Class Action Settlements**

4          Actions brought as class actions may only be settled with court approval. *See* Fed.

5  R. Civ. Proc. 23(e). There is a presumption that settlement negotiations were conducted

6  in good faith, but nevertheless, "district courts should review class action settlements just

7  as carefully at the initial stage as they do at the final stage. At the initial stage, the

8  inquiry should be whether the settlement is "fair, reasonable, and adequate," based on

9  any information the district court receives from the parties or can obtain through its own

10 research." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016). Rule

11 23(e)(2) of the Federal Rules of Civil Procedure states that the district court may only

12 approve the settlement if, taken as a whole, "it is fair, reasonable, and adequate." *See*

13 *also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). In determining

14 whether to finally approve a settlement, the district court must balance "the strength of

15 the plaintiffs' case; the risk, expense, complexity, and likely duration of further

16 litigation; the risk of maintaining class action status throughout the trial; the amount

17 offered in settlement; the extent of discovery completed and the stage of the

18 proceedings; the experience and views of counsel; the presence of a governmental

19 participant; and the reaction of the class members to the proposed settlement." *Id.*

20          While it is less clear what standard should drive the preliminary approval process,

21 "[s]ome district courts ... have stated that the relevant inquiry is whether the settlement

22 'falls within the range of possible approval' or 'within the range of reasonableness.'"

23 *Cotter*, 176 F. Supp. 3d at 935 (citing *In re High–Tech Emp. Antitrust Litig.*, No. 1–CV–

24 02509–LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014); *see also, id.* ("perhaps

25 the most important factor to consider is 'plaintiffs' expected recovery balanced against

26 the value of the settlement offer.'"). Where both sides face significant uncertainty, the

27 attendant risks favor settlement. *Hanlon*, at 1026. The Court's scrutiny of the proposed

28 settlement is as rigorous at preliminary approval as at the final approval stage. *See, e.g.,*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   *Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016).

2                    **1.      Strength of Plaintiffs' Case, Mediation Supports Approval**

3          Courts presume a settlement is fair. The Settlement here was reached through

4   arm's-length bargaining between counsel, with a respected mediator, which included

5   offers and counteroffers and eventual agreement. Class Counsel was confident in the

6   merits of claims asserted, and likewise Defendant maintained that it would be able to

7   defeat a class certification motion and/or class claims on the merits, including an

8   anticipated motion for summary judgment. The parties preferred this Settlement to

9   facing protracted litigation and incurring costs and fees before this honorable Court or

10  the Ninth Circuit.

11         Prior to mediation, both parties researched their claims and defenses in order to

12  appropriately evaluate the strengths and weaknesses of their respective cases, and did so

13  in view of the comprehensive class-wide discovery addressed above. (Exh. B, Stoops

14  Declaration, ¶¶ 19-29). Prior to and during the mediation, Defendant also voluntarily

15  provided class data and information which permitted an objective assessment of

16  Defendant's potential liability exposure. (*Id*.)  At the mediation, both parties carefully

17  weighed the risks and benefits of resolving the case in comparison to proceeding with

18  the motion for class certification and then potentially before the Ninth Circuit. The

19  parties concluded that the settlement terms were acceptable and the benefits of settling

20  outweighed the risks of further litigation. (*Id*.).

21                    **2.      The Risk, Expense, Complexity, Likely Duration of Litigation**

22         The parties have disputed the strength of Plaintiffs' claims and the substantial risk

23  of not attaining class certification under Rule 23. (Exh. B, Stoops Decl., ¶¶ 19-29).

24  Defendant produced all relevant policies, which appear facially lawful, so Plaintiffs

25  faced the prospect of proving an unlawful practice of alleged failure to pay CSRs for off-

26  the-clock work.   Defendant refuted these allegations, and presented evidence and

27  arguments as to why the class members had been paid for all compensable work

28  activities. As there is no written record of off the clock work, Defendant also argued

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   there was no way to determine how much time was allegedly not separately

2   compensated or why a task was productive, and individualized issues predominated

3   requiring individual inquiries that precluded Rule 23 certification and rendered any

4   proposed class or collective trial unmanageable. Class Counsel submits it has properly

5   assessed the risks of continued litigation, including at trial and on appeal, in concluding

6   the Settlement is fair.

7       Both sides advocated strongly for their respective clients' chances for success

8   on the primary claim in this off-the-clock call center case.  Plaintiffs' off-the-clock

9   claim required they establish both the actual time they spent opening and closing

10  computer programs and applications, and that the activity was compensable as work.

11  The Portal-to-Portal Act exempts employers from liability under FLSA for "activities

12  which are preliminary to or postliminary to [the] principal activity or activities" that

13  an employee is employed to perform. 29 U.S.C. § 254(a)(2).  In *Integrity Staffing*

14  *Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014), the Supreme Court held that the

15  phrase "principal activity or activities" means all activities that are an "integral and

16  indispensable part of" the employee's principal activities.  An activity is "integral and

17  indispensable" only if it is "an intrinsic element of those activities and one with which

18  the employee cannot dispense if he is to perform his principal activities." *Id.*

19      Proof of liability and damages here would have been challenging given the

20  difficulty in proving that Defendant suffered or permitted the CSRs to perform work

21  activities off the clock, and absence of official time records confirming the amount of

22  work performed.  Defendant asserted that the facts underlying each CSR's claim

23  varied substantially, precluding class certification, and that any off the clock work

24  amounted to, at most, seconds.  Defendant, thus, asserted the *de minimis* defense as a

25  complete bar to Plaintiffs' claims.

26      Settlement now saves the parties and the Court from years of litigation,

27  including FLSA notice implementation, intensive classwide discovery, Rule 23 class

28  certification, dispositive motions, trial, and appeal.  It is very likely that this litigation

would extend for another two years and cost the parties hundreds of thousands of dollars or more in attorneys' fees and expenses. For these same reasons, the law strongly favors settlements, particularly where complex class action litigation is concerned. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In light of Defendant's advocated defenses, the difficulties in proving off-the-clock work and damages, the number of class members, uncertainty of certifying claims, and the manageability issues presented, the Settlement is within the range of reasonableness for approval. (Exh. B, Stoops Decl., ¶¶ 19-29).

### 3.     The Risk of Maintaining Class Action Status Through Trial

The above discussion applies to the risks of maintaining this action through trial, as Plaintiffs would have faced contested motion practice and continued expenses and delay to get to trial, would have faced manageability challenges at trial, and would have likely faced the additional time and delay required in further proceeding before the Ninth Circuit. (Exh. B, Stoops Decl., ¶¶ 19-29). Defendant asserted its policies were facially compliant and that individualized issues predominate requiring individual inquiries that preclude Rule 23 certification and render any proposed class, collective or representative trial unmanageable. This included arguing application of the *de minimis* doctrine and that Defendant's compensation system accounted for all hours worked. The uncertainty on the legal issues at the core of the parties' claims and defenses further underscores the reasonableness of the proposed Settlement in the face of palpable risk.

The parties strongly contested the relative risks in this case, and adjusted them based on several factors, including recent case law, likelihood of success at certification, likelihood of success on the merits, and varying assumptions of alleged non-compliance with California law. Given the constantly shifting legal landscape of class action litigation, there is also a significant chance that any class certification, collective and/or representative order or judgment in favor Plaintiffs could be overturned on appeal. All of these were very substantial risks any of which could have resulted in the class/collective

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   members receiving nothing if the claims were further litigated.

2      **4.**  **The Amount Offered In Settlement Is Fair and Reasonable**

3     The parties strongly contested the relative risks in this case, including the amount

4   of potential damages. The class/collective/representative/manageability issues were

5   contested by Defendant, who denied the claims and liability. The final settlement reflects

6   a compromise in the respective parties' view of that risk.

7     Plaintiffs estimate that if they were 100% successful in their overtime and

8   straight time claims, the best possible recovery for the pre-, mid- and post-shift log-

9   in/log-out claims (from February 8, 2014 through September 2018), the total off-the-

10   clock damages, would equal $479,789, assuming liquidated damages on 6 minutes of

11   off-the-clock work per shift per class member.   (Exh, B, Stoops Decl., ¶¶ 28-29).

12   Plaintiffs estimate total penalties as follows:  improper wage statement penalties (Cal.

13   Labor Code § 226(a)) of $278,900; waiting-time penalties (*id.*, §§ 201, 202) of

14   $492,398;  and  PAGA  penalties  (assuming  maximum  penalties  for  all  asserted

15   violations) of $557,800. (*Id.*).   However, Plaintiffs recognize significant risk in the

16   possibility of recovering these PAGA penalties, given the difficulty of proving

17   entitlement to all penalties and the Court's discretion in reducing penalties (Cal. Lab.

18   Code § 2699(e)(2)), especially in light of Defendant's assertion that it relied in good

19   faith on precedent in determining its pay practices.  For those reasons, and in light of

20   the percentage of total settlement value allocated to PAGA claims in similar cases, the

21   $37,500 allocated to PAGA claims here is reasonable.

22     Based on the damage analysis conducted by Plaintiffs' Counsel and their

23   expert economist, and in light of the factual and legal defenses identified above and

24   in the attached Declaration of Kevin Stoops (Exh. B), the $647,500 settlement

25   equates to approximately 35.79% of Defendant's $1,808,887 potential total claim

26   exposure. (*Id.*).   The settlement amount is substantial, completely reasonable, and

27   marks a fair compromise of the claims. (*Id.*). Significantly, the total settlement

28   amount equates to 135% of the total actual wage damages suffered by the Class when

computing claims equal to 6 minutes of off-the-clock work per shift per class member (at their actual hourly rate of pay) *and* **adding liquidated damages**. With an estimated **248** class members (i.e., assuming no class members opt out of the Settlement), the average payment to them using a straight average is approximately **$1,869.45** per employee.

These estimated percentages and payments represent real and substantial recoveries, and are appropriate in view of the state of the law and Plaintiffs' claims and Defendant's defenses, as addressed above. *See, e.g., Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) ("significant reduction would be appropriate here [for the PAGA allocation].")

Settlement in class actions is preferable where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976).  Here, the Settlement is fair and reasonable based on the strength of Plaintiffs' claims and the risks and costs of further litigation. The Settlement compares favorably to the uncertainties of litigation. *Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Courts in the Ninth Circuit have observed that: "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). The Settlement here is significantly more than a "fraction" and provides a recovery commensurate with the associated risk factors involved in the case.

**5.      The Extent of the Discovery Completed, Stage of Proceedings**

Before mediation, Plaintiffs' counsel completed comprehensive discovery as

17

detailed above, and the parties had ample documents and data to arrive at meaningful settlement negotiations and calculations. (Exh. B, Stoops Decl., ¶¶ 18-29). The production included relevant policy and other documents and ESI comprising timekeeping records, which Plaintiffs' expert economist reviewed with counsel to estimate violation rates and potential liability exposure to Defendant. (*Id*.). Before mediation, the parties conferred to discuss and clarify specific factual issues for purposes of the mediation. These efforts provide more than adequate factual bases upon which to arrive at a settlement that is well within the range of reasonableness.

### 6. The Experience and Views of Counsel

Another factor considered in determining the fairness of a settlement is the experience and views of counsel. *Hanlon*, 150 F.3d at 1026. Courts do not second guess the parties, or substitute their judgment for that of the proponents of the settlement, and many courts give considerable weight to the opinion of experienced counsel supporting the settlement. *See, e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Where there is no evidence of fraud or collusion, courts presume they were conducted in good faith. *See Newberg on Class Action*, 3d Ed. § 11.51.

Class Counsel have practiced law for many years, have focused their practices on wage and hour class actions, and have cumulatively been appointed class counsel or co-class counsel in scores of class actions, obtaining substantial recoveries for hundreds of thousands of employees. (Exh. B, Stoops Decl., ¶¶ 7-10). Defendant is represented by Mitchell Silberberg & Knupp, LLP, a well-known employment defense firm, and defense counsel are well-versed in litigating wage and hour class actions. The parties and counsel believe the Settlement is fair and appropriate given all factors involved.

### 7. The Presence of a Governmental Participant

Contemporaneous with the filing of this Motion for Preliminary Approval, the Claims Administrator will submit the Settlement to the California LWDA pursuant to the PAGA statute. Further, within 10 days of Plaintiffs' counsel filing the Motion for Preliminary Approval, the Claims Administrator will submit the Settlement to the to the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Attorneys General for the United States and the States where class members reside pursuant to the Class Action Fairness Act. (Exh. A, Settlement, ¶ 10).

## V. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiffs request, and Defendant does not oppose, conditional certification of the Settlement Class and FLSA Collective for the purposes of this Settlement only.

### A. The Settlement Classes Satisfy the Requirements of Rule 23

Plaintiffs, without opposition, request conditional certification under Rule 23(a).

#### 1. The Numerosity Requirement is Satisfied

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Settlement Class and FLSA collective total approximately 248 employees and numerosity is satisfied.

#### 2. Common Questions of Law and Fact Exist

Commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In the Ninth Circuit, this requirement "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  Even though proposed class members "may possess different avenues of redress," so long as "their claims stem from the same source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a)(2)." *Id*. at 1019-20. Here, common questions include (a) Defendant's policies and practices with respect to log-in and clock-in practices, (b) the nature and significance of Defendant's shift tolerance policy, (c) whether Defendant's conduct was willful, (d) the legal contours of the *de minimis* doctrine, and other issues.

#### 3. Claims of the Plaintiffs Are Typical

Rule 23 typicality is satisfied.  Typicality tends to merge with commonality, such that "a finding of commonality will ordinarily support a finding of typicality." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  A class plaintiff's claim is typical of those of other class members if the claims arise from the

same practice or course of conduct and are based on the same legal theory." *In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  Here, Plaintiffs' and Settlement Class Members' claims arise from the same practices and are based on the same legal theory, for the reasons set forth above.  *See Kritzer v. Safelite Sols., LLC*, No. 10 Civ. 0729, 2012 U.S. Dist. LEXIS 74994, at *12 (S.D. Ohio May 30, 2012) (finding typicality satisfied where "the CSRs and SRs performed similar (if not identical) call center duties for Safelite).

### 4.    Plaintiffs Are Adequate

Plaintiffs and their counsel provide adequate representation of the interests of the Settlement Class and FLSA Collective. Class Counsel has represented employees in numerous wage and hour lawsuits brought as class actions, and has ample resources, experience, and expertise to draw upon in representing the class in this action. (Exh. B, Stoops Decl., ¶¶ 7-10.)  Here, Plaintiffs Lopez and Dixon understand and accepted their obligations as representatives of the Settlement Class, and they have adequately represented the Settlement Class's interests by devoting time to prosecution of the claims including numerous detailed interviews with Class Counsel, providing Class Counsel with substantial amounts of documents and information, and assisting Class Counsel in reviewing and analyzing the factual defenses raised by Defendant. (*Id.* at ¶¶ 3-40).

### B.    The Prerequisites of Rule 23(b) Are Also Satisfied

#### 1.    The Predominance Requirement

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." As noted in *Cotter*, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be

required under Rule 23(e)." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Here, Plaintiffs contend that adjudication of the common issues surrounding Defendant's alleged employment practices could establish Defendant's liability on a class-wide basis.  Common legal issues could predominate because, in Plaintiff's view, all class/collective members were subject to the same policies and shared similar job duties and were subject to the alleged failure to pay for non-productive time. Although an individual class/collective member may have incurred more off-the-clock hours than another, individual damages calculations will not defeat predominance. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016).

### 2.      The Superiority Requirement

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996). Proceeding as a class action would be superior to the alternative, which is individual suits by over 248 class/collective members against Defendant or protracted class certification fight on appeal. Given the current case posture and the Settlement Agreement, class-wide settlement in this instance will serve to reduce future litigation costs and promote greater efficiency in resolving the claims at issue.

### C.      The Standard for Section 216(b) FLSA Settlement Approval Is Met.

The FLSA provides that "any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be."  29 U.S.C. § 216(b).  FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C.  § 216(b).  *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1354 (11th Cir.

1982). If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55. For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be approved.

## VI. REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT[4]

Plaintiffs respectfully request approval of the following Settlement allocations.

### A. The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval

The Settlement allocates, subject to the Court's final approval at the fairness hearing, $161,875 (or 25% of the Total Settlement Amount), to Class Counsel for attorneys' fees and up to $22,000 in lawsuit costs.

Prior to the hearing on the motion for final approval of the Settlement, Class Counsel will request approval of their fees and costs, as addressed in the schedule in the [Proposed] Order, and will provide detailed billing records and costs invoices to document hours worked and costs incurred in this litigation. The specifics of the requested fees and costs are further addressed by Class Counsel in the Declaration of Kevin Stoops. (Exh. B, Stoops Decl., ¶¶ 33-38, 41-43). To date, Class Counsel has incurred at least 200 hours and over $100,000 in fees, and anticipates that any present lodestar multiplier will equal 1.5 or less the time incurred in taking this action through final approval. (*Id.* at ¶ 37).

To date, Class Counsel has also incurred approximately $16,000 in necessary and reasonable litigation costs. (*Id.* at ¶ 112). "Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action." *In re Optical Disk*

---

[4] Plaintiffs' Counsel recognizes that all requested allocations for attorneys' fees, costs, and enhancement awards, are preliminary in nature and subject to final approval of the Court after the notice and objection period.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515, at *62-63 (N.D. Cal. Dec. 19, 2016); *Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*, 1989 WL 73211, at *6 (C.D. Cal. March 9, 1989) (quoting *Newberg, Attorney Fee Awards* § 2.19 (1987)); Vincent, 557 F.2d at 769 ("[T]he doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves.").

### B.    The Class Representative Enhancement Is Reasonable

The Settlement calls for a Service Payment for each Named Plaintiff in the amount of up to $5,000 each, for a total of $10,000. (Exh. A, Settlement ¶ 8(a)). It is customary for "named plaintiffs . . . [to be] eligible for reasonable incentive payments" as part of a class action settlement. *Staton*, 327 F.3d at 977. Service or incentive payments constitute "an essential ingredient of any class action," because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These payments recognize the plaintiffs' time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public and powerful manner.

Plaintiffs assisted Class Counsel with investigation and evaluation of the class claims, including producing documents and attending multiple telephonic conferences and meetings with counsel. They have satisfied their obligations as class representatives, have incurred many hours in service to this case and the class members, and have been invaluable in developing the claims, conducting discovery into them, and in reaching the Settlement that is before the Court for approval. (Exh. B, Stoops Decl., ¶¶ 39-40).

### C.    The Administrator and Administration Costs Should Be Approved

The Settlement Agreement allocates $10,000 to Simpluris, Inc., for its services as Claims Administrator. (Exh. A, Settlement ¶ 9(e)).  Simpluris, Inc, is well-respected and has been utilized successfully by Class Counsel in numerous settlements of similar

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   nature to the instant litigation. (Exh. B, Stoops Decl., ¶ 41). The Simpluris, Inc., bid of

2   $10,000 is reasonable given the number of individuals involved in the Settlement. (*Id.* at

3   ¶ 42). Therefore, Plaintiffs request approval of Simpluris, Inc., as the administrator and

4   of the allocation of $10,000 to administration expenses.

5

6   **VII.  THE PROPOSED METHOD OF NOTICE IS APPROPRIATE**

7        The notice here satisfies the requirements that the class notice must be the "best

8   notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and

9   that the Court "direct notice in a reasonable manner to all class members who would

10  be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice is satisfactory "if it

11  generally describes the terms of the settlement in sufficient detail to alert those with

12  adverse viewpoints to investigate and to come forward and be heard." *Churchill*

13  *Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal

14  citation and quotation marks omitted). Notice mailed to each class member "who can

15  be identified through reasonable effort" constitutes reasonable notice. *Eisen v.*

16  *Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). For any class certified under Rule

17  23(b)(3), the notice must inform class members "that the court will exclude from the

18  class any member who requests exclusion," stating "when and how members may

19  elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

20       The form of the notice here is consistent with modern best practices set forth by

21  the Federal Judicial Center and was negotiated and agreed upon by counsel for the

22  parties. The notice encourages class members to contact the Settlement Administrator

23  with any questions, and it provides telephone, mail, e-mail, and facsimile contact

24  information for the Settlement Administrator. *Id*

25       This notice plan is consistent with class certification notices approved by

26  numerous state and federal courts, and is, under the circumstances of this case, the

27  best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 477-

28  76 (E.D. Cal. 2009) (holding notice involving similar mail procedures as here meets

both Rule 23(e) and Rule 23(c) requirements); *Adams v. Inter-Con Security Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466, at *4 (N.D. Cal. Oct. 30, 2007) (finding that notice using similar mail procedure as here "satisfies the notice requirements of Rule 23(e), and ... all other legal and due process requirements").

## VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

If the Court grants preliminary approval, a date for the final fairness hearing needs to be set and included in the class notice.  The parties request that the Court adopt the following schedule for purposes of effectuating the various steps in the settlement approval process described above.

| Event | Proposed Date |
|---|---|
| Preliminary Approval Hearing Date | November 5, 2018 |
| Entry of Preliminary Approval Order | October 5, 2018 (assumed; balance of dates work off of this assumed date) |
| Defendant to provide the Claims Administrator with addresses for Class Notice to be mailed | November 15, 2018 |
| Deadline for the Claims Administrator to mail Class Notice Packet (Mailing Date) | November 26, 2018 |
| Deadline for Class Members to mail Elections Not to Participate in Settlement and Objections | January 10, 2019 |
| Deadline for Filing Motion for Attorneys' Fees and Costs | December 27, 2018 |
| Deadline for Parties to file response to objections. | Within 7 days before Final Fairness Hearing |
| Deadline for filing Final Approval Motion | No later than 28 days in advance of Final Fairness Hearing |
| Final Approval Hearing | February 11, 2019 |

## IX.    <u>CONCLUSION</u>

For the foregoing reasons, without opposition from Defendant, respectfully request that the Court: (1) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23(c) and § 216(b) of the FLSA; (2) preliminarily certify the proposed settlement class; (3) approve the proposed class notice and forms; (4) set the deadlines for filing elections not to participate and objections to the Settlement; and (5) schedule a final approval hearing.

DATED: September 25, 2018          DAVID YEREMIAN & ASSOCIATES, INC.

By:   /s/ David Yeremian
          David Yeremian

SOMMERS SCHWARTZ, P.C.
Kevin J. Stoops (*pro hac vice*)
Charles R. Ash, IV (*pro hac vice*)

*Counsel for Plaintiffs and Proposed Class and Collective Members*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT